UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

UNITED STATES OF AMERICA

                         :

     —v.—                     :          7:25-CR-00310 (CS)

                         :

JOEL BABULAL,

                         :

                  *Defendant.*

-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT JOEL BABULAL'S MOTION *IN LIMINE*

 

**TANNER & ORTEGA, L.L.P.**
By: Howard E. Tanner, Esq.
170 Hamilton Ave, Suite 315
White Plains, NY 10601
(914) 358-5998
*Attorney(s) for Defendant Joel Babulal*

Defendant Joel Babulal ("Mr. Babulal") respectfully submits this memorandum of law in support of his motion *in limine* pursuant to Federal Rule of Evidence 403.

## PRELIMINARY STATEMENT

The charges in this case arise from an alleged scheme involving the theft of mail and the use of stolen financial information for fraudulent transactions. According to the Government, co-defendant Tameka Babulal, a United States Postal Service employee, used her position to intercept mail, including checks, credit cards, and personal identifying information, and participated in a series of financial fraud schemes.[1] Mr. Babulal is accused of participating in certain aspects of that conduct. Critically, however, there is no allegation that he was involved in Ms. Babulal's hiring, the preparation or submission of her job application (Exhibit A), or the creation or use of any information contained in it.

Against that backdrop, the Government seeks to rely on that same job application, in which Ms. Babulal used a fictitious reference name, "Mark Khan," and a telephone number it contends was associated with Mr. Babulal.[2] Even assuming the number belonged to him, its mere appearance on a document prepared by another does not establish knowledge, agreement, or participation. Admission of the job application would invite the jury to conclude otherwise; to infer that because a number allegedly associated with Mr. Babulal appeared on the application, he must have known of or participated in the deception. That conclusion rests not on evidence, but on speculation.

---

[1] On March 18, 2026, Tameka Babulal entered a guilty plea to the Indictment and allocuted to the charges against her.

[2] At her aforementioned plea and allocution, Tameka Babulal admitted that her job application was fraudulent and that "Mark Khan" was not a real individual.

Rule 403 does not permit the Government to substitute association for proof. Taken to its logical conclusion, the Government's position would allow any person's identifying information to be placed on a document by another and then used as evidence of that person's culpability. A phone number is not proof of knowledge or intent. Without evidence tying Mr. Babulal to the application itself, its admission would invite precisely the kind of unfair prejudice and conjecture Rule 403 is designed to prevent. The application therefore has minimal, if any, probative value and should be excluded.

## RELEVANT BACKGROUND

The Government alleges that on or about July 12, 2021, co-defendant Tameka Babulal applied for employment with the United States Postal Service and falsely listed a job reference under the fictitious name "Mark Khan." Based on that conduct, Ms. Babulal was charged with making false statements in violation of 18 U.S.C. § 1001(a)(2). On March 18, 2026, Ms. Babulal admitted to that conduct, stating:

> "When I applied to my job at the post office in 2021, I lied on the application. I indicated on the application that I had previously worked at a restaurant and that my supervisor was someone named Mark Khan. I listed Mark Khan as a reference when I applied to work at the post office. This was a lie. While I did work at the restaurant, Mark Khan was not my supervisor and is not a real person. I lied on the application because I did not think my real supervisor would say good things about me."

Exhibit B – Tameka Babulal Allocution Transcript at p. 29:5–13 (emphasis added).

The Indictment further alleges that, following her hiring, Ms. Babulal became a United States Postal Service letter carrier in Mount Vernon, New York. See Indictment at ¶ 2. According to the Government, while employed in that position, she stole mail entrusted to her for delivery and transported that mail to the residence she shared with Mr. Babulal in Hempstead, New York. See Id. at ¶ 4(c)–(e). Items taken from that mail, including credit cards,

2

checks, and personal identifying information, are alleged to have been used in fraudulent financial transactions and related schemes. Ms. Babulal has also admitted to that later conduct, stating:

> "While I was on my mail route, I repeatedly stole mail that I was supposed to deliver to people's homes and businesses. Some of the mail contained checks and credit cards. I took this mail even though I knew it was wrong. I would then bring the mail to my home, and I gave some of the stolen mail to my co-conspirator."

Exhibit B at p. 28:3–8.

The Indictment alleges that Mr. Babulal was her co-conspirator in connection with that later conduct. As such, he is charged in Counts One, Two, Three, Four, Five, Six, Eight, and Nine, alleging violations of 18 U.S.C. §§ 2, 371, 1001(a)(2), 1028A(a)(1), 1028A(b), 1343, 1344, and 1709. Ms. Babulal was jointly charged in Counts One through Seven and separately charged in Count Eight.

## ARGUMENT

### THE MERE LISTING OF A PHONE NUMBER AND ALIAS ALLEGEDLY ASSOCIATED WITH MR. BABULAL DOES NOT ESTABLISH KNOWLEDGE OR PARTICIPATION

The Indictment suggests that the Government will seek to introduce[3] the aforementioned job application, a document that purportedly bears Mr. Babulal's phone number and alias, "Mark Khan." See Indictment at ¶ 14. To the extent the Government attempts to do so, the job application should be excluded. Irrespective of its purported relevance, Rule 403 permits a Court to exclude such evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Under Rule 403,

---

[3] The Government's position at Tameka Babulal's allocution further supports this. See Exhibit B at p. 27:2-16.

"unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." United States v. Ashburn, No. 11-CR-303 (NGG), 2015 U.S. Dist. LEXIS 115629, at *84-85 (E.D.N.Y. Aug. 31, 2015), quoting Old Chief v. United States, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997); see United States v. McCallum, 584 F.3d 471, 476 (2d Cir. 2009).

Though the "standard of relevance established by the Federal Rules of Evidence is not high," United States v. Southland Corp., 760 F.2d 1366, 1375 (2d Cir. 1985), a Court has "broad discretion to balance probative value against possible prejudice" under Rule 403. United States v. Bermudez, 529 F.3d 158, 161 (2d Cir. 2008). Here, any minimal probative value is substantially outweighed by the risk of unfair prejudice, and that discretion should be exercised. The only alleged links between the fraudulent job application and Mr. Babulal are a phone number and a fictitious alias, both of which he denies using or knowing. There is no allegation that he prepared, submitted, or knew of the application when it was completed. The defendant never created or knew of the fabricated persona "Mark Khan," directed anyone to use that fictitious reference, consented to the use of any phone number allegedly associated with him, or otherwise participated in the false statement at issue.

The challenged job application's apparent force depends not on a direct evidentiary link, but on speculation and a chain of inferences. If admitted, the jury would be invited to attach incriminating significance to information not connected to Mr. Babulal and to treat association as proof. Rather than proving knowledge or participation through direct evidence, the Government would ask the jury to infer that because a number and fictitious alias allegedly associated with Mr. Babulal appeared on the application, he must have known of or endorsed the deception. That is precisely the type of unsupported inference Rule 403 is designed to guard against. Where

evidence derives its value only through such attenuated reasoning, it should be excluded under Rule 403.

The Second Circuit has recognized that <u>identifying information, on its own, does not sufficiently establish that a document is attributable to a defendant or that an asserted identity is genuine.</u> <u>See</u> <u>United States v. Vayner</u>, 769 F.3d 125, 132 (2d Cir. 2014) (holding that "the mere fact that a page with [defendant's] name and identifying information happened to exist on the Internet … does not permit a reasonable conclusion that this page was created by the defendant or on his behalf.") (emphasis added); <u>see also</u> <u>United States v. Dhinsa</u>, 243 F.3d 635, 658-59 (2d Cir. 2001) ("mere assertion of identity by a person talking on the telephone is not in itself sufficient to authenticate that person's identity . . . ."). Those same concerns apply with equal force to the fictitious name "Mark Khan," which the Government cannot attribute to Mr. Babulal merely because it appeared on an application prepared by another person.

If the Government's theory were accepted, any person's telephone number or fabricated alias could be placed on a fraudulent application by another, entirely without that person's knowledge, and then offered as supposed evidence of that person's culpability. As <u>Vayner</u> recognized, even a document bearing identifying information still requires proof that it in fact stemmed from the defendant. <u>See</u> <u>Vayner</u>, 769 F.3d at 132. ("Had the government sought to introduce, for instance, a flyer found on the street that contained [defendant]'s Skype address and was purportedly written or authorized by him, the district court surely would have required some evidence that the flyer did, in fact, emanate from [defendant.]"). But a listed phone number or fictitious name, without independent proof tying the defendant to the document or the deception itself, is not proof of knowledge, agreement, or intent.

5

Instead, such a theory would depend entirely on a speculative chain of assumptions. In other words, the Government is proposing that i) the listed number was associated with Mr. Babulal, ii) the fictitious alias was attributable to him, iii) he knew both were being used on the application, iv) he approved of that use, and v) he shared the deceptive purpose behind it. Crucially, this theory does not simply infer knowledge of a document and its contents. Instead, it further invites the jury to conclude that this purported conduct was part of a broader scheme that would later involve mail theft and fraud. By doing so, the Government's theory imputes participation in a future criminal scheme to Mr. Babulal and necessarily extends "the length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved" while also "lessen[ing] the probative value of the evidence, and may therefore render it more susceptible to exclusion as . . . prejudicial . . . ." United States v. Robinson, 544 F.2d 611, 616 (2d Cir. 1976); quoting United States v. Ravich, 421 F.2d at 1204 n.10.

Such an extended chain of inferences does not reflect the type of "logical inferences" contemplated by Rule 403, but instead requires the jury to bridge multiple unsupported gaps with speculation. Cf. United States v. Diaz, 878 F.2d 608, 615 (2d Cir. 1989) ("The logical inferences resulting from proffered evidence do not engender the unfair prejudice against which Rule 403 is directed.") (internal quotations omitted); see United States v. Dazzo, 672 F.2d 284, 288 (2d Cir.), cert. denied, 459 U.S. 836, 74 L. Ed. 2d 77, 103 S. Ct. 81 (1982). Here, the inference is not a single, logical step. On the contrary, it is a layered progression that transforms an unverified association into proof of knowledge, intent, and ultimately participation in a broader criminal scheme. That is precisely the type of reasoning Rule 403 guards against, as it invites the jury to substitute conjecture for evidence and to treat the mere appearance of identifying information as proof of culpability. Put simply, the longer and more attenuated the inferential chain, the weaker

6

the application's probative value and the greater the danger that the jury will convict on an improper basis.

This risk of unfair prejudice is further heightened by the likelihood of a needless side dispute over whether the number and alias were his, whether he knew they were used, and what, if anything, may be inferred from those allegations. Admission would also risk diverting the trial into collateral disputes of limited relevance. Rather than focusing on the charged offenses, the parties would be drawn into litigating whether the listed number and alias were actually associated with Mr. Babulal, whether he knew they were used, and what significance, if any, may be drawn from those facts. Rule 403 is designed to prevent precisely that kind of detour into side issues that threaten to confuse the issues, mislead the jury, and waste time on matters ancillary to the charges. See United States v. Schatzle, 901 F.2d 252, 256 (2d Cir. 1990) (recognizing danger where evidence would create complex "mini trial[s]" that could confuse or mislead the jury to "focus . . . upon the wrong event[s]"); see also Ricketts v. City of Hartford, 74 F.3d 1397, 1414 (2d Cir. 1996) (affirming exclusion of evidence that was "more confusing than helpfully probative" because of the risk of a "trial within a trial").

Moreover, when considering whether the danger of unfair prejudice substantially outweighs the probative value of evidence, Courts are instructed to account for "the availability of other means of proof." Old Chief, 519 U.S. at 184. To the extent the Government possesses admissible evidence bearing directly on Mr. Babulal's knowledge or participation, it has no need to rely on a document whose alleged connection to him rests on speculation and inference.[4] Accordingly, because the challenged application derives whatever force it has only through an extended chain of inferences leading to a weak link to Mr. Babulal, it should be excluded.

---

[4] Indeed, it is anticipated that the Government will seek to introduce at trial other documents for proof of the defendant's knowledge or use of the alias "Mark Khan".

## CONCLUSION

For the reasons set forth above, Mr. Babulal respectfully requests that the Court exclude Co-defendant Tameka Babulal's U.S. Postal Service job application.

**WHEREFORE**, Defendant Joel Babulal's motion *in limine* should be granted in its entirety.

Dated: May 8, 2026
White Plains, NY

**TANNER & ORTEGA, L.L.P.**

By: Howard E. Tanner, Esq.
170 Hamilton Ave, Suite 315
White Plains, NY 10601
(914) 358-5998
*Attorney(s) for Defendant Joel Babulal*

8